UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: YOSEMITE NATIONAL PARK HANTAVIRUS LITIGATION | Case No. 14-md-02532-MMC   (KAW)<br><br>**ORDER REGARDING JOINT DISCOVERY LETTER BRIEFS**<br><br>Re: Dkt. Nos. 157, 158 |

Currently pending before the Court are the parties' joint discovery letter briefs (Dkt. Nos. 157, 158.) The Court deems the matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b). Having reviewed the papers filed by the parties and the relevant legal authority, the Court resolves the parties' discovery disputes as set forth below.

## I.  BACKGROUND

Plaintiffs Carolyn Garisto and Estate of Bruno Garisto ("Garisto Plaintiffs"); Rupal Badani, Estate of Amit Jha, M.J., and K.J. ("Badani Plaintiffs"); Cathy Carrillo; Roger Mann and Sherrie Mann ("Mann Plaintiffs"); and Christopher Harrison and Felicia Tornabene ("Harrison/Tornabene Plaintiffs") bring the instant suit against Defendants Delaware North Companies Parks & Resorts at Yosemite, Inc., Delaware North Companies Parks & Resorts, Inc., and Delaware North Companies, Inc. (collectively "DNC"); Yosemite Construction, Inc. and Bradley Popp (collectively "Yosemite Construction"); and the United States of America.

Hantavirus is a lethal virus that is transmitted through the air, and there is an increased risk of infection when there is a high level of deer mice and their feces, urine, and saliva in an area. (Consolidated Compl. ¶ 31, Dkt. No. 139.) The instant case concerns an outbreak of Hantavirus in Yosemite National Park in the summer of 2012, which infected ten people and resulted in three

1  fatalities.  (Consolidated Compl. ¶ 32.)  Nine of these ten people, including Plaintiffs, contracted
2  Hantavirus in the "Signature Tent Cabins" in Yosemite's Curry Village.  (Consolidated Compl. ¶¶
3  69-73, 81.)  The Signature Tents used a double-wall design, even after a prototype double-walled
4  tent was allegedly found to be "infested with mice" and constituted a "health hazard."
5  (Consolidated Compl. ¶¶ 48, 50.)  Despite that, Defendants approved the use of the double-walled
6  design for the Signature Tent Cabins, which were built in 2009.  (Consolidated Compl. ¶ 51.)
7  Prior to the summer of 2012, there were also several reports and complaints about rodent
8  infestations at Curry Village.  (Consolidated Compl. ¶¶ 58, 60-63.)  Additionally, in June and July
9  2012, the California Department of Public Health assessed studies revealing a significant density
10 of Hantavirus-infected rodents in Yosemite, and recommended that educational brochures be
11 posted throughout Yosemite.  (Consolidated Compl. ¶¶ 59.)  Despite these reports, Defendants did
12 not take corrective measures, such as developing a comprehensive Hantavirus policy or following
13 rodent control and abatement plans.  (Consolidated Compl. ¶¶ 63-67.)

14 On April 13, 2016, Plaintiffs filed the operative Master Consolidated Complaint, alleging
15 the following causes of action: (1) wrongful death (Garisto and Badani Plaintiffs), (2) survival
16 (Garisto and Badani Plaintiffs), (3) negligence, (4) strict product liability, (5) violations of the
17 California Consumer Legal Remedies Act (Mann Plaintiffs), (6) fraud and concealment, (7)
18 premises liability, (8) loss of consortium (Garisto Plaintiffs, Plaintiff Sherrie Mann, Plaintiff
19 Felicia Tornabene), (9) breach of warranty, (10) failure to warn, (11) negligent infliction of
20 emotional distress (Garisto Plaintiffs), and (12) civil conspiracy (Garisto Plaintiffs).

## II.   LEGAL STANDARD

22 Rule 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's
23 claim or defense and proportional to the needs of the case, considering the importance of the
24 issues at stake in the action, the amount in controversy, the parties' relative access to relevant
25 information, the parties' resources, the importance of the discovery in resolving the issues, and
26 whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R.
27 Civ. P. 26(b)(1).  The "[i]nformation within this scope of discovery need not be admissible in
28 evidence to be discoverable."  *Id.*

2

Rule 33(a) provides:

(2) *Scope*. An interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

Fed. R. Civ. P. 33(a).

Rule 34(a) provides:

A party may serve on any other party a request within the scope of Rule 26(b):
   (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
      (A) any designated documents or electronically stored information-- including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
      (B) any designated tangible things[.]

Fed. R. Civ. P. 34(a).

All discovery is subject to the limitations imposed by Rule 26(b)(2)(C), which requires the court to limit discovery upon a finding (1) that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from other source that is more convenient, less burdensome, or less expensive, (2) that the party seeking discovery has had ample opportunity to obtain the information sought, or (3) that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C).

### III.   DISCUSSION

**A.   Discovery letter re interrogatories**

The parties' first joint letter concerns Defendants' interrogatory seeking medical and psychological information, which reads as follows:

> IDENTIFY and describe in detail each injury, illness, disease, disability, psychological condition, or other physical or mental problem, that YOU were diagnosed with or experienced, from age

3

> eighteen to the present. YOUR answer should specify when each
> . . . was first diagnosed, the HEALTHCARE PROVIDER who made
> the diagnosis, its treatment and duration, whether (and if so when
> and where) YOU were hospitalized or institutionalized for it.

(Dkt. No. 157 at 2.)

First, as to Plaintiffs Tornabene and Sherrie Mann, Plaintiffs argue that the Government did not submit this interrogatory to them. (*Id.* at 4, 6.) The parties do not provide the interrogatories that were directed to these Plaintiffs, and based on the record before it, the Court cannot find that this interrogatory was directed to either of these Plaintiffs. On that basis, the Court denies Defendants' request that Plaintiffs respond to this interrogatory.

Second, as to the Garisto Plaintiffs, Plaintiffs argue that they should not be required to produce information on mental health records and psychotherapy notes because they are not seeking more than a "garden-variety" claim of emotional distress. Federal Rule of Evidence 501 states that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." In California, when a plaintiff seeks recovery for mental injuries, that plaintiff "unquestionably waive[s] their physician-patient and psychotherapist-patient privileges as to all information concerning the medical conditions which they have put in issue." *Britt v. Superior Court*, 20 Cal. 3d 844, 849 (1978). This waiver of privacy rights to mental health records requires "asserting more than a garden-variety claim of emotional distress." *Turner v. Imperial Stores*, 161 F.R.D. 89, 97 (S.D. Cal. 1995); *Fitzgerald v. Cassil*, 216 F.R.D. 632, 633 (N.D. Cal. 2003) (no waiver of privacy when plaintiff did not allege "cause of action for intentional or negligent infliction of emotional distress" or "specific psychiatric injury or unusually severe emotional distress extraordinary in light of the allegations").

Here, Plaintiffs contend that the Garisto Plaintiffs only proceed on claims for wrongful death, and thus "discovery or disclosure of their psychiatric records is improper." (Dkt. No. 157 at 5.) The Garisto Plaintiffs' claims, however, are not limited to wrongful death; rather, they are the only Plaintiffs to have brought a claim for negligent infliction of emotional distress, in which they assert that they have suffered symptoms including "continued nausea, headaches, hysterical attacks, insomnia, severe depression, nightmares, nervousness and stress or anxiety." (Consolidated Compl. ¶ 169.) This is far more than a "garden-variety" claim of emotional distress.

4

The Garisto Plaintiffs have therefore put their mental health at issue in this lawsuit, and the Court grants Defendants' motion to compel a response to this interrogatory.

### B. Discovery letter re requests for production

The parties' second joint letter concerns two disputes over Defendants' Requests for Production. (Dkt. No. 158.)

#### i. Income tax returns

The parties' first dispute concerns the following Request for Production:

> Produce all copies of any income tax returns for PLAINTIFFS filed during the past ten years.

(*Id.* at 2.) All Plaintiffs have refused to provide tax documentation.

In general, "California recognizes a privilege protecting tax returns from disclosure." *Young v. United States*, 149 F.R.D. 199, 201 (S.D. Cal. 1993). District courts, however, have not applied California's privilege in Federal Tort Claims Act cases, but instead found that federal privilege law applies to discovery and the admission of evidence in such cases. *Id.* at 204; *see also Bowerman v. Field Asset Servs., Inc.*, Case No. 13-cv-57-WHO, 2013 WL 6057043, at *2 n.3 (N.D. Cal. Nov. 14, 2013) (applying California privilege and distinguishing *Young* because in *Young*, "the plaintiff put her income at issue by seeking 'lost wages' in a Federal Tort Claims Act case, as to which the California privilege against forced disclosure of tax returns did not apply"). Instead, several courts have found that "federal law recognizes a privilege that protects tax returns from disclosure, although that privilege is not absolute." *Brady v. Grendene USA Inc.*, Case No. 12cv604-GPC(KSC), 2015 U.S. Dist. LEXIS 97734, at *16 (S.D. Cal. July 24, 2015). These courts "have formulated a two-prong test for deciding whether to compel the production of tax records in discovery." *Id.*; *see also Zuniga v. W. Apartments*, CV 13-4637 JFW(JCx), 2014 WL 2599919, at *11 (C.D. Cal. Mar. 25, 2014) ("Courts generally apply a two-pronged test to assure a balance between the liberal scope of discovery and the policy favoring the confidentiality of tax returns"). First, the Court looks at whether the tax return is relevant to the subject matter of the action. *Brady*, 2015 U.S. Dist. LEXIS 97734, at *17. Second, the Court considers whether "there is a compelling need for the returns because the information contained therein is not otherwise

readily obtainable." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006) (internal quotation omitted); *see also Aliotti v. Vessel Senora*, 217 F.R.D. 496, 497-98 (N.D. Cal. 2003) (applying two-prong test).

The Court finds that the first prong is satisfied in this case. Defendants argue that the tax returns are relevant to calculating the amount of lost wages and support at issue in this case because an award for lost wages should be calculated after appropriate deductions for taxes, and Plaintiffs do not contend otherwise. (Dkt. No. 158 at 3-4.) The Court finds that the second prong, however, is not satisfied. Plaintiffs asserting a wage loss claim have produced their W-2 forms, which state their income and withheld taxes. (*Id.* at 4.) Defendants have not explained what additional information they seek from the tax returns that is not already contained in these W-2 forms. (*See id.* at 3.) Absent this explanation, the Court will not compel Plaintiffs to produce their tax returns.

### ii.  Medical and psychological records

The parties' second dispute concerns the following Request for Production:

> Produce all DOCUMENTS and ESI, including HEALTHCARE PROVIDER RECORDS in YOUR POSSESSION, CUSTODY, or CONTROL that REFER or RELATE to any physical or mental disease, disorder, disability, or chronic medical condition with which either of the PLAINTIFFS has been diagnosed.

(*Id.* at 2.)

First, as to Defendants' request for Plaintiff Tornabene's medical records, Plaintiffs argue that Defendants have not explained why they require Tornabene's medical records when she is not claiming any personal injury. (*Id.* at 7.) The Court agrees. Defendants state that they seek medical records because Plaintiffs have alleged permanent injuries and conditions, and medical records revealing pre-existing medical conditions are necessary to determining work and/or life expectancy of such Plaintiffs, which in turn goes to calculation of damages. (*Id.* at 5.) In Tornabene's case, however, she does not allege that she herself suffered a permanent injury or condition that affects her work and/or life expectancy, as it was her husband who was infected by Hantavirus. Without an explanation as to why Defendants require Tornabene's medical records specifically, the Court will not compel production of these records.

6

Second, regarding Defendants' request for the Garisto Plaintiffs' psychiatric records, the Court finds that this discovery is permissible. As discussed above, the Garisto Plaintiffs are not merely alleging "garden-variety" emotional distress claims, but have brought a claim for negligent infliction of emotional distress, including symptoms such as hysterical attacks, severe depression, nightmares, and stress. (Consolidated Compl. ¶ 169.) Thus, they have put their mental health at issue in this suit, and discovery is appropriate.

Third, as to Plaintiffs Tornabene's[1] and Sherrie Mann's mental health records, Defendants contend that several district courts have deemed the psychotherapist-patient privilege waived by loss of consortium claims. (Dkt. No. 158 at 6.) Plaintiffs respond that their records are not relevant to their loss of consortium claims as both of these Plaintiffs did not begin to see a therapist until 2016, nearly four years after the Yosemite events. (*Id.* at 9.) In general, a loss of consortium claim seeks to "compensate a plaintiff for the impairment to his or her marital life resulting from the spouse's injury." *Aguilar v. Cty. of Fresno, Cal.*, No. 1:08-cv-1202 AWI GSA, 2009 WL 3617984, at *5 (E.D. Cal. Oct. 29, 2009). Thus, courts focus on the relationship between the plaintiff and his or her spouse, "embrac[ing] such elements as love, companionship, comfort, affection, society, sexual relations, the moral support each spouse gives the other through the triumph and despair of life, and the deprivation of a spouse's physical assistance in operating and maintaining the family home." *Ledger v. Tippitt*, 164 Cal. App. 3d 625, 633 (1985), *disapproved on other grounds by Elden v. Sheldon*, 46 Cal. 4d 267, 277 (1988). At least one court has not permitted discovery into mental health records where a plaintiff only alleges a claim for loss of consortium, but does not otherwise assert a cause of action for a specific injury or emotional distress, reasoning that such a plaintiff "is seeking to recover damages for that which her husband can no longer provide her, not for the emotional distress that such loss may have caused." *Campbell v. Logue*, Civil No. 10-cv-1821-JM (DHB), 2012 WL 1666762, at *3 (S.D.

---

[1] Plaintiffs also contend that the mental health records of Laurel, the Harrison/Tornabene's minor daughter, are not discoverable. (Dkt. No. 158 at 9.) Based on the Court's review of the Requests for Production, the Requests are not directed at her, and Defendants make no argument that Laurel should be required to produce her mental health records. (*See* Dkt. No. 158, Exh. A at 2 (defining "PLAINTIFFS" as Plaintiffs Christopher Harrison and Felicia Tornabene), 10 (requesting medical records related to any physical or mental disease that "PLAINTIFFS" have been diagnosed)

United States District Court
Northern District of California

Cal. May 11, 2012). Other courts that have permitted discovery have put limits on the permissible scope of that discovery, focusing on the relationship between the plaintiff and the decedent. *E.g.*, *Engert v. Stanislaus Cty.*, No. 1:13-cv-126 LJO-BAM, 2014 WL 5217301, at *4-5 (E.D. Cal. Oct. 14, 2014) (allowing discovery of mental health records for the three years preceding the death of the plaintiff's husband, but denying discovery of records prior to the three years or after the date of death); *Prescott v. Cty. of Stanislaus*, No. 1:10-cv-592 JLT, 2011 WL 5877013, at *5 (E.D. Cal. Nov. 22, 2011) (allowing discovery of mental health records related to the plaintiff's relationship with the decedent).

In the instant case, Plaintiffs do not assert claims of emotional distress, and the records sought are nearly four years removed from the Yosemite events. While such records could be relevant to Tornabene's and Mann's present relationship with their spouses by showing how the relationship has changed and therefore affecting the amount of damages, Defendants' request is broad and not tailored to records that would actually be relevant to the loss of consortium claim. Defendants must provide more information about what is needed and why it is proper for discovery, particularly when the current version of the Federal Rules of Civil Procedure no longer authorize Defendants to pursue potential information that might lead to the discovery of admissible evidence. *See Gilead Scis. v. Merck & Co., Inc.*, No. 5:13-cv-4057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Mar. 17, 2014) ("No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence"). Accordingly, Defendants' request for this information is denied.

Finally, with respect to Plaintiff Harrison's psychotherapy notes, the Court finds that this discovery is relevant to damages, including his present condition and its effect on his work and/or life expectancy. Thus, the Court grants discovery as to these records.

///

///

///

///

///

8

### IV. CONCLUSION

For the reasons set forth above, the Garisto Plaintiffs shall respond to the interrogatories and requests for production related to their medical and mental health conditions. Plaintiff Harrison shall produce his psychotherapy notes. The remainder of Defendants' requests is denied.

IT IS SO ORDERED.

Dated: September 23, 2016

_____
KANDIS A. WESTMORE
United States Magistrate Judge